# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:12-CV-341-RJC-DCK

| | |
|---|---|
| STACY ORTIZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| BIG BEAR EVENTS, LLC ) | |
| d/b/a ANGRY ALE'S, and ) | |
| ANDREW HENSON, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion To Dismiss" (Document No. 6). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be granted.

## I. BACKGROUND

Stacy Ortiz ("Plaintiff" or "Ortiz") filed a "Complaint" (Document No. 1-1) against Defendants Big Bear Events, LLC d/b/a Angry Ale's ("Angry Ale's") and Andrew Henson ("Henson") (together, "Defendants") in the Superior Court of Mecklenburg County, North Carolina on April 30, 2012. The Complaint asserts the following causes of action: (1) sex harassment, retaliation and constructive discharge in violation of Title VII; (2) sex discrimination in violation of North Carolina's public policies; (3) intentional infliction of emotional distress; (4) negligent supervision and retention by Angry Ale's; (5) negligent infliction of emotional distress; and (6) assault and battery. (Document No. 1-1, pp.7-14). Plaintiff was employed as a server at Angry Ale's, a restaurant owned by Big Bear Events, LLC, from approximately May 2008 until January

2011. (Document No. 1-1, p.4). Plaintiff contends that during her employment at Angry Ale's she was subjected to sexual harassment, as well as unwanted physical contact, by Angry Ale's owner/manager Defendant Henson. Id.

Defendants filed a "Notice Of Removal" (Document No. 1) with this Court on May 31, 2012. "Defendant's Motion To Dismiss" (Document No. 6) was filed on June 27, 2012. The pending motion seeks dismissal pursuant to Rule 12(b)(6) of: (1) the first cause of action for retaliation and constructive discharge; (2) the second cause of action for sex discrimination in violation of N.C. Gen. Stat. § 143-422.1, *et seq.*; (3) the third cause of action for intentional infliction of emotional distress ("IIED"); and (4) the fifth cause of action for negligent infliction of emotional distress ("NIED"). (Document No. 6).

Plaintiff filed a document on July 23, 2012 that has been construed by the Court as her "Response" to the pending motion to dismiss. (Document No. 10). In that "Response," Plaintiff stated that she "does not oppose dismissal of her second cause of action, which includes a claim for sexual harassment and discrimination in violation of North Carolina public policies." (Document No. 10, p.17). Plaintiff's "Response" requests that she be allowed an opportunity to amend her complaint, if the Court determines that insufficient facts are alleged to support the first, third, or fifth causes of action. (Document No. 10, p.24).

The "Reply In Support Of Defendants' Motion To Dismiss" (Document No. 13) was filed on August 16, 2012. As such, immediate review of the pending motion and a recommendation for disposition to the presiding district judge are now appropriate.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the

2

applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1960 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

**A. Retaliation and Constructive Discharge**

Defendants move to dismiss Plaintiff's first cause of action, to the extent it asserts claims of retaliation and constructive discharge in violation of Title VII. (Document No. 6, p.1). However, Defendants do not seek dismissal of the first cause of action's claim of sex harassment. Id.

**1. Retaliation**

The parties agree that "[t]he elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." (Document No. 7, p.4) (quoting Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012)); see also, (Document No. 10, pp.8-9). Defendants contend that the Complaint here fails to establish that Defendants took an adverse employment action against Plaintiff or that the alleged "retaliation" was tied to any "protected activity." Id.

Viewed in the light most favorable to Plaintiff, the undersigned finds that the Complaint sufficiently alleges that Plaintiff engaged in a protected activity – seeking the advice of counsel and filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in or about June - July 2010; however, the element of an adverse employment action presents a closer question. (Document No. 1-1, p.4).

> In the context of a discrimination claim, an adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment. Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007); Thorn v. Sebelius, 766 F.Supp.2d 585, 598 (D.Md. 2011). "Although conduct short of ultimate employment decisions can constitute adverse employment action, there still must be a tangible effect on the terms and conditions of employment." Geist v. Gill/Kardash P'ship, 671 F.Supp.2d 729, 737 n.6 (D.Md. 2009). FN4
>
>> FN4. Adverse employment actions in the retaliation context are evaluated under a more lenient standard. A plaintiff may satisfy the requirement of adverse

4

> employment action under Title VII's anti-retaliation provision by showing that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." . . .
>
> . . . Plaintiff fails to allege that she suffered an adverse employment action. Plaintiff does not allege that she was demoted, suffered a cut in salary, lost benefits, or was transferred to a less favorable position. Instead, she cites common workplace annoyances – micromanagement, nasty looks, gossip, being relocated to an office without a window, etc.—all complaints that are not actionable. . . .

Burrell v. Parexel Intern., LLC, 2012 WL 4757936 at *3 (D.Md. Oct. 4, 2012) (citations omitted).

"An adverse employment action can also include an employer's decision to demote an employee or relegate him to 'reduced pay, diminished opportunity for promotion, reduced responsibility, or lower rank.'" E.E.O.C. v. PBM Graphics, Inc., 2012 WL 2513512 at *6 (quoting Royster v. Costco Wholesale Corp., 378 F.Supp.2d 595, 605 (M.D.N.C.2005)). In short, "[a]n adverse employment action is one which alters the terms or conditions of employment." Anderson v. Duke Energy Corp., 3:06cv399-ME, 2008 WL 4596238 at *13 (W.D.N.C. Oct. 14, 2008) (citing Enowmbitang v. Seagate Technology, Inc., 148 F.3d 970, 973 (8th Cir.1998)).

Here, Plaintiff contends she suffered adverse employment action beginning in or around June 2010, when Angry Ale's General Manger, Andrea Coleman ("Coleman"), "began closely monitoring Plaintiff, requested coworkers to monitor Plaintiff and report back to her and refused to allow Plaintiff to pick-up additional shifts at the restaurant." (Document No. 1-1, p.4); see also, (Document No. 10, pp.10-11). Plaintiff argues that the denial of additional shifts resulted in lost wages and tips, and is therefore an adverse employment action.

Defendants contend that a failure to assign additional shifts is not an adverse employment action. (Document No. 13, p.3). Defendants argue that there is no allegation that Plaintiff suffered

5

a reduction in pay, reduction in hours, or a demotion of any kind. (Document No. 13, pp.3-4). The undersigned agrees. The facts as alleged in the Complaint simply do not support a finding that Plaintiff's terms or conditions of employment were altered because she was unable to pick up *additional* shifts.

The allegations in the Complaint also fail to support a claim that Plaintiff suffered an adverse employment action because a manager "requested coworkers to monitor Plaintiff and report back to her." (Document No. 1-1, p.4). As acknowledged by Plaintiff, Defendants cite to a decision of the Fourth Circuit holding that "[i]n no case in this circuit have we found an adverse employment action to encompass a situation where the employer has instructed employees to ignore and spy on an employee who engaged in protected activity, without evidence that the terms, conditions, or benefits of her employment were adversely affected." (Document No. 7, p.6) (quoting Munday v. Waste Mgmt. Of N. Am., 126 F.3d 239, 243 (4th Cir. 1997)); see also, (Document No. 10, p.11).

In response, Plaintiff cites decisions from other Circuits that purportedly "recognize the potential adverse employment action of using co-workers to monitor employees engaged in protected activity." (Document No. 10, p.11). However, Plaintiff's caselaw is distinguishable because it supports the proposition that sufficiently severe co-worker hostility or retaliatory harassment may constitute adverse employment action if known or acquiesced in by supervisors or management. Id. In contrast to the cases cited by Plaintiff, the Complaint does not allege any hostility or harassment by her co-workers, much less severe hostility or harassment. Moreover, Plaintiff alleges that Coleman requested coworkers to monitor Plaintiff, but there are no allegations about if, when, or how they might have responded to that request.

The undersigned further observes that the alleged adverse employment actions here do not appear likely to dissuade a reasonable worker from making or supporting a charge of discrimination.

See Burlington Northern & Santa Fe Railway v. White, 548 U.S. 53, 68 (2006). In fact, in this case Plaintiff filed her charge of discrimination after the alleged monitoring began and after she was denied the opportunity to pickup additional shifts. (Document No. 1-1, p.4). As such, the alleged adverse employment actions did not dissuade Plaintiff from making and supporting a charge of discrimination on or about July 8, 2010. (Document No. 7-1).

Based on Plaintiff's failure to sufficiently allege facts to support a prima facie case of retaliation, specifically regarding the adverse employment action element, the undersigned will recommend that this claim be dismissed.

### 2. Constructive Discharge

Defendants also move to dismiss Plaintiff's first cause of action to the extent it asserts a claim for constructive discharge. First, Defendants contend that Plaintiff fails to allege the basic elements of a constructive discharge claim or facts that support such elements. (Document No. 7, p.9). Defendants also suggest that the constructive discharge claim may be procedurally deficient because Plaintiff did not make such a claim to the EEOC. (Document No. 7, p.9, n.5) (citing Knotts v. Univ. of N.C. at Charlotte, 3:08cv478-RLV, 2011 WL 650493 (W.D.N.C. Feb. 10, 2011).

In Knotts, this Court opined that

> The scope of the plaintiff's claim is confined by the EEOC charge. Therefore, if the suit alleges claims that were not included in the EEOC charge or claims that would not have naturally arisen from an investigation of the EEOC charges, then such charges are procedurally barred and should be dismissed for lack of jurisdiction. Id. Put more simply, if a claim falls outside the scope of the EEOC charge then it is procedurally barred. Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir.1995). . . .
>
> Indeed, the Fourth Circuit has found that constructive discharge is an entirely separate act requiring administrative exhaustion. Young v. Nat'l Ctr. For Health Serv. Research, 828 F.2d 235, 237–38 (4th Cir.1987). As such, Knotts' claim for constructive

7

> discharge is not "included in the EEOC charge" and does not naturally arise from an investigation of the EEOC charges. Chacko, 429 F.3d at 508.

Knotts, 2011 WL 650493 at *4. Here, Plaintiff filed her charge of discrimination months before she resigned from Defendants' employment, and therefore, such charge did not include a claim of constructive discharge. Id.; see also, (Document No. 7-1).

Plaintiff acknowledges the Knotts decision, but contends that her constructive discharge claim naturally arises from investigation of the EEOC charge. (Document No. 10, p.14). However, based largely on Judge Voorhees' opinion in Knotts, the undersigned is inclined to recommend that the constructive discharge claim is procedurally deficient and that the Court lacks subject matter jurisdiction. As in Knotts, Plaintiff's EEOC charge did not include a claim for constructive discharge, and the undersigned is not persuaded that it would have naturally arisen from an investigation of the EEOC charge. See (Document No. 7-1).

*Even if* Plaintiff's constructed discharge claim is not procedurally barred, the undersigned agrees that Plaintiff has failed to sufficiently allege the basic elements of such a claim. "An employee is entitled to relief absent a formal discharge, 'if an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit.'" Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 186 (4th Cir. 2004) (quoting Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353-54 (4th Cir.1995)). "Thus, in order to demonstrate constructive discharge, a plaintiff must allege and prove two elements: (1) 'deliberateness of the employer's actions' and (2) 'intolerability of the working conditions.'" Martin v. Cavalier Hotel Corp., 48 F.3d at 1354.

In this case, there is no allegation that Defendants were acting deliberately to induce Plaintiff to quit. Moreover, Plaintiff does not actually allege that conditions were so intolerable that a reasonable person would quit. Although the Complaint alleges that Plaintiff and other employees

were subjected to sexual harassment beginning at least as far back as in or about May 2008, Plaintiff does not specifically allege that she or other employees resigned based on their treatment by Defendants. (Document No. 1-1, p.2). Instead, the Complaint states that Plaintiff was seeking additional shifts in 2010, and suggests that she resigned in January 2011 after Angry Ale's was closed for renovations. (Document No. 1-1, pp.6-7). As noted by Defendants, the Complaint does not provide the date Plaintiff quit her employment, or even state the reason(s) for her resignation. (Document No. 7, p.9).

> [A] claim of constructive discharge cannot succeed unless it also includes a more basic element, i.e., causation. If the evidence shows that the plaintiff did not quit, or quit for a reason other than his working conditions, then logically the plaintiff was not constructively discharged.
>
> In this case, Plaintiff never claims that he quit as a result of intolerable working conditions.

Strickland v. Jewel, 562 F.Supp.2d 661, 674 (M.D.N.C. 2007). In short, Plaintiff's Complaint fails to assert sufficient factual allegations to support a claim of constructive discharge.

Based on the foregoing, the undersigned will recommend that Plaintiff's constructive discharge claim be dismissed.

**B. Sex Discrimination in violation of N.C. Gen. Stat. § 143-422.1, *et seq.***

As noted above, Plaintiff has abandoned her second cause of action. (Document No. 10, pp.17-18). Accordingly, the undersigned will recommend that this claim be dismissed.

**C. Intentional Infliction of Emotional Distress**

The parties agree that an IIED claim requires a showing that: (1) Defendant engaged in extreme and outrageous conduct; (2) which was intended to and did in fact cause; (3) severe emotional distress. (Document No. 7, p.11; Document No. 10, p.18) (citing Waddle v. Sparks, 331

N.C. 73, 82 (1992)). In the Waddle decision, the Supreme Court of North Carolina specifically addressed the element of severe emotional distress:

> In the context of a claim for negligent infliction of mental distress, we stated:
>
>> the term "severe emotional distress" means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of *severe and disabling* emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.
>
> Johnson v. Ruark Obstetrics & Gynecology Assoc., 327 N.C. 283, 304, 395 S.E.2d 85, 97, reh'g denied, 327 N.C. 644, 399 S.E.2d 133 (1990) (emphasis added). We see no reason not to adopt the same standard for a claim for intentional infliction of emotional distress. At a minimum, applying the same standard to both torts promotes a symmetry desirable in this area of the law.

Waddle, 331 N.C. at 83. "To satisfy this element of an IIED claim, a plaintiff must forecast medical documentation or 'evidence of 'severe and disabling' psychological problems within the meaning of the test laid down in Johnson v. Ruark.'" Strickland v. Jewel, 562 F.Supp.2d 661, 676 (M.D.N.C. 2007) (quoting Waddle v. Sparks, 331 N.C. at 85).

> The Court will determine whether the alleged conduct is sufficiently "extreme and outrageous" as a matter of law. Id. Such conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." . . .
>
> "North Carolina courts have been particularly hesitant in finding intentional infliction of emotional distress claims actionable within an employment claim,"

Sturdivant v. Kone, Inc., 3:09-cv-224-RJC, 2010 WL 2723729 at *11 (W.D.N.C. July 8, 2010) (citations omitted). This Court recently noted that "North Carolina courts have stated that '[i]t is extremely rare to find conduct in the employment context that will rise to the level of

outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.'" Thomas v. Duke University, 3:11-cv-387-FDW, 2012 WL 4753299 at *5 (W.D.N.C. Oct. 4, 2012).

The Complaint alleges that "Plaintiff suffered severe emotional distress, severe mental anguish and anxiety, depression, embarrassment, humiliation, and her peace of mind has been disturbed." (Document No. 1-1, p.8). The Complaint does not describe any specific physical, emotional, or mental symptoms or difficulties, or forecast evidence of any treatment based on her allegations.

Plaintiff argues that she "has not failed to provide any forecast of documentation" because her alleged anxiety and depression "are both diagnosed mental illnesses under the relevant medical texts." (Document No. 10, p.10). However, Plaintiff does not assert that she was diagnosed with anxiety or depression, or any other mental illness. Plaintiff's argument seems to be either misleading or incomplete. Even in response to the pending motion to dismiss, Plaintiff has still failed to forecast any evidence of a severe or disabling emotional or mental condition. (Document No. 10). Here, as in Strickland,

> Plaintiff has not presented any medical documentation to support a finding that h[er] difficulties are symptoms of a recognized emotional or mental condition. The paucity of medical care sought for the alleged symptoms itself creates an inference that the distress was not sufficiently severe to support an IIED claim. Without evidence establishing a substantial medical condition, h[er] IIED claim cannot succeed....

Strickland, 562 F.Supp.2d at 676-677.

While Defendants' alleged conduct appears to have been at a minimum lewd and wholly inappropriate, the undersigned is not persuaded that the Complaint sufficiently alleges the elements of an IIED claim. As such, the undersigned will recommend that this cause of action be dismissed.

11

**D. Negligent Infliction of Emotional Distress**

"To make out a claim for negligent infliction of emotional distress, a plaintiff must ... [allege] that the defendant was negligent, that it was foreseeable to the defendant that his negligence would cause the plaintiff severe emotional distress, and that the conduct, in fact, caused severe emotional distress." Franklin v. Yancey Co., 1:09cv199-ME-DCK, 2010 WL 317804 at *7 (W.D.N.C. Jan. 19, 2010) (quoting Holleman v. Aiken, 668 S.E.2d 579, 591 (N.C.App. 2008) (quoting Fox-Kirk v. Hannon, 142 N.C.App. 267, 273 (2001)); see also, Johnson v. Ruark, 327 N.C. 304.

Plaintiff contends, "In the Alternative," that Defendant Angry Ale's is liable for NIED. (Document No. 1-1, p.12). Plaintiff asserts that the actions of Defendants described in paragraphs 6-20 of the Complaint constitute negligence. Id.

Defendants argue that because Plaintiff "has failed to allege a diagnosable disorder sufficient to meet the Ruark definition of severe emotional distress, her claim for negligent infliction of emotion distress also fails as a matter of law." (Document No. 7, p.15). Moreover, Defendants contend that Plaintiff's allegations only show intentional conduct, not negligent conduct, and for that reason as well her NIED claim must be dismissed. Id.; see also, (Document No. 13, pp.11-12). The undersigned agrees.

Based on Defendants' arguments, most specifically Plaintiff's failure to sufficiently allege severe emotional distress as that term of art has been construed by the Supreme Court of North Carolina, and by this Court, the undersigned will also recommend dismissal of Plaintiff's NIED claim. See Swick v. Wilde, 2012 WL 3780350 at *30 (M.D.N.C. Aug. 31, 2012) (IIED and NIED claims denied where plaintiff failed to show severe emotional distress). Moreover, even in the most favorable light, Plaintiff's NIED cause of action does not show negligent conduct by Defendant

Angry Ale's. Rather, paragraphs 6-20 of the Complaint specifically allege intentional conduct by Defendant Henson, except for one paragraph alleging that Angry Ale's received a subscription to Playboy magazine. (Document No. 1-1, pp.5-6). See Johnston v. Leith, Inc., 2011 WL 1770434 at *10 (E.D.N.C. May 9, 2011) ("In a claim for NIED, a plaintiff cannot simply restate facts regarding intentional behavior that form the basis for a claim of IIED to form a claim for NIED.").

Based on the foregoing, the undersigned is also persuaded that Plaintiff's alternative cause of action for NIED should also be dismissed.

## IV. CONCLUSION

The underlying Complaint certainly asserts serious and disturbing allegations against Defendants. Although Defendants may challenge Plaintiff's other claims at a later date, at this stage there is no argument that Plaintiff's Complaint adequately states causes of action for sex harassment, negligent supervision and retention, and assault and battery. As such, this lawsuit will continue and at least these unchallenged claims will be subjected to discovery and motions practice.

However, as discussed above, the undersigned concludes that Defendants' motion to dismiss some of Plaintiff's claims should be allowed. In short, the undersigned agrees that those claims discussed in some detail above fail to meet the standard to survive a Rule 12(b)(6) motion to dismiss. To the extent Plaintiff requests leave to amend her Complaint, the undersigned notes that no motion to amend has been filed, and that such a request would have been more appropriate if filed upon this case's removal to this Court or in response to the pending motion to dismiss. See Fed.R.Civ.P. 15 (a)(1)(B).

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendant's Motion To Dismiss" (Document No. 6) be **GRANTED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Robert J. Conrad, Jr.

**IT IS SO RECOMMENDED**.

Signed: November 6, 2012

David C. Keesler
United States Magistrate Judge